JAMES R. ROBERTS, ROBERT I. ROSE, JOHN A. BAILEY, LAWRENCE KIRK, JOSEPH DOSER, BRUCE E. BLACKADAR, ANNE HOWARD, CHAD MURVOSH, STANLEY HILLYARD, MOHAMED YOUSEF, on BEHALF OF THEMSELVES AND ALL OTHER PERSON SIMILARLY SITUATED, APPELLANTS, *v.* STATE OF NEVADA, UNIVERSITY OF NEVADA SYSTEM, BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA AND THE UNIVERSITY OF NEVADA SYSTEM, DANIEL KLAICH, FRANKIE SUE DEL PAPA, DOROTHY GALLAGER, CHRIS KARAMANOS, JOAN KENNEY, JOANN SHEERIN, JUNE WHITLEY, CAROLYN SPARKS, IN THEIR CAPACITY AS THE BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA SYSTEM, RESPONDENTS.

No. 18314

March 30, 1988                    752 P.2d 221

*Dyer and McDonald,* Carson City, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Donald Klasic,* General Counsel, University of Nevada System, Reno, for Respondents.

## OPINION

*Per Curiam:*

The appellants are, or were, professional employees under contract with the University of Nevada System. They have all worked for the state continuously for eight or more years, during which time their job performance was rated standard or better. The professional employees claim that NRS 284.177 entitled them collectively to receive approximately one and one-half million dollars in retroactive longevity pay. The respondents (herein-

after, "the State") are the State of Nevada, the University of Nevada System, and the regents of the University of Nevada.

In 1973, the Nevada Legislature enacted Chapter 529 of the Statutes of Nevada—the source of NRS 284.177—which provided:

> A longevity incentive plan administered by the personnel division is hereby established for employees with 10 years or more of continuous state service. Employees rated standard or better with 10 years of continuous service shall receive $125 semiannually with a semiannual increase of $25 for each additional year of service up to a maximum semiannual amount of $250 for 15 years or more of continuous state service.

1973 Nev. Stats. ch. 529, at 822. Subsequent amendments to NRS 284.177 decreased the number of years of service required for longevity pay eligibility from ten to eight and changed the amount of compensation.

In 1974—in response to an inquiry from an official at the University of Nevada as to whether professional employees of the University of Nevada System were eligible for longevity pay under NRS 284.177—the State Personnel Division proposed, and the State Personnel Advisory Commission adopted, the following rule:

> *Basic Plan*
>
> This plan is designed to apply only to those employees covered by the State merit system. This will include State classified and unclassified employees and exclude contract, judicial, legislative and *university administrative and academic employees.*

(Emphasis added). This rule was incorporated in section M of Rule III of Chapter 8200 of the State Administrative Manual.

In 1982, Rule III(M) was amended to provide simply that the longevity pay plan authorized by NRS 284.177 "applies to classified and unclassified employees of the state." The language of the former rule that specifically excluded contract, judicial, legislative and university administrative and academic employees was deleted.

In 1984, the State Personnel Department (formerly the State Personnel Division) attempted to amend NAC 284.262 (formerly part of Rule III(M)) to read as follows:

> The plan to encourage continuity of service established pursuant to NRS 284.177 applies to:
> (1) Classified employees; and
> (2) Unclassified employees whose positions are mentioned in

NRS 284.140 and are specifically authorized as unclassified positions by the legislature in the pay bill for unclassified positions.

Since the positions occupied by professional employees of the University of Nevada System apparently were not specifically authorized as unclassified positions by the legislature in the pay bill for unclassified employees, this language would have excluded the University of Nevada professional employees from coverage under the longevity pay statute.

The State Personnel Commission adopted the proposed regulation; however, the Legislative Counsel Bureau refused to approve the new language and, instead, revised it to read as follows: "The plan to encourage continuity of service established pursuant to NRS 284.177 applies to classified and unclassified employees of the State." This language was submitted to the Legislative Commission and ultimately became effective after the Legislative Commission failed to object to it.

In 1985, the legislature enacted NRS 284.179 to eliminate the confusion that NRS 284.177 had generated. That statute states succinctly that "[t]he professional employees of the University of Nevada System are *not entitled* to receive the increases provided in NRS 284.177." NRS 284.179 (emphasis added.)

The district court granted the State's motion for summary judgment on the grounds that the State was immune from suit under NRS 41.032.[1] The district court reasoned that the 1982 and 1984 amendments to NAC 284.262 (formerly part of Rule III(M)) were invalid because they were adopted pursuant to unconstitutional administrative procedures. Specifically, the district court found NRS 233B.062 through NRS 233B.070, which provide for legislative review of administrative regulations, to be violative of both the constitutionally mandated procedures for enacting legislation and the separation of powers provisions of the Nevada State Constitution. The district court concluded that since the 1982 and 1984 amendments were invalid, the 1974 regulation, as it existed before its amendment, remained in effect. The district court further concluded that the State acted with due

---

[1]NRS 41.032 provides in part:

Except as provided in NRS 278.0233 no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:

1. Based upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction; or

. . . .

care to implement the original 1974 regulation by not paying University of Nevada professional employees longevity pay; the State was therefore immune from suit under NRS 41.032.

Administrative regulations cannot contradict or conflict with the statute they are intended to implement. Agsalud v. Blalack, 699 P.2d 17 (Haw. 1985); New Mexico Bd. of Pharmacy v. New Mexico Bd. of Osteopathic Medical Examiners, 626 P.2d 854 (N.M. 1981). It follows, then, that regulations may neither include nor exclude University of Nevada System professional employees from the longevity pay provisions in NRS 284.177 unless in so doing they conform to the original legislative intent behind the statute. Therefore, to determine whether the University of Nevada professional employees are entitled to retroactive longevity pay, we must construe NRS 284.177.

As originally enacted, NRS 284.177 established a longevity payment plan for "employees" who met specified requirements for duration and continuity of state service. *See* 1973 Nev. Stats. ch. 529, at 822. We note that it is a fundamental rule of statutory construction that when a statute is clear and unambiguous on its face, a court may not go beyond the language of the statute in determining the legislature's intent. McKay v. Board of Supervisors, 102 Nev. 644, 730 P.2d 438 (1986); Cirac v. Lander County, 95 Nev. 723, 602 P.2d 1012 (1979). The term "employees," as used in the context of NRS 284.177, is subject to multiple interpretations and thus ambiguous. When a statute is ambiguous, "the plain meaning rule has no application," *McKay,* 102 Nev. at 649, 730 P.2d at 442, and the statute can be construed " 'in line with what reason and public policy would indicate the legislature intended.' " *McKay,* 102 Nev. at 649, 730 P.2d at 442 (quoting Robert E. v. Justice Court, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983)).

The over-generality of the language of NRS 284.177 becomes immediately apparent when viewing the title of its source, 1973 Statutes of Nevada, Chapter 529, which declares that it is "AN ACT providing for a longevity incentive plan for *certain* state employees; and providing other matters properly relating thereto." 1973 Nev. Stats. ch 529, at 822 (emphasis added). The legislature's use of the word "certain" in the tile denotes an intent not to include all state employees generally in the longevity incentive plan. *See* A Minor Girl v. Clark County Juvenile Court Services, 87 Nev. 544, 490 P.2d 1248 (1971) (the title of an act or statute may be considered in construing a statute).

In addition, it is logically inconsistent to construe NRS 284.177 to include the University of Nevada System professional employees. As originally enacted, NRS 284.177 provided that the longevity plan was to be administered by the Personnel Division. The Personnel Division, however, did not have authority over University of Nevada System professional employees.

We have noted in the past that, " '[t]he leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained will prevail over the literal sense.' " Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637, 503 P.2d 457, 458 (1972) (quoting State ex rel. O'Meara v. Ross, 20 Nev. 61, 63, 14 P. 827, 828 (1887)). In 1985 the legislature enacted section 1 of Chapter 277 of the Statutes of Nevada.[2] This statute was later codified as NRS 284.179, which provides as follows: "The professional employees of the University of Nevada System are not entitled to receive the increases provided in NRS 284.177." NRS 284.179. In section 2 of Chapter 277 of the 1985 Statutes of Nevada, the legislature painstakingly explained that "Section 1 of this act does not change the rights of professional employees of the University of Nevada System. It constitutes a declaration and clarification of existing law." 1985 Nev. Stats. ch. 277 § 2, at 845. We observed in Sheriff v. Smith, 91 Nev. 729, 542 P.2d 440 (1975), that "[w]here a former statute is amended, or a doubtful interpretation of a former statute rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of what the Legislature intended by the first statute." Sheriff v. Smith, 91 Nev. at 734, 542 P.2d at 443 (citations omitted). It would be difficult to imagine a more certain, if not more timely, expression of the legislature's original intent regarding the scope of NRS 284.177.

The legislative intent behind a statute may also be determined by examining the circumstances which propelled the enactment of the statute. See McKay, 102 Nev. at 650, 730 P.2d at 443 (citation omitted). As NRS 284.177 was originally enacted, the State Personnel Division was to administer the longevity pay compensation scheme. See 1973 Nev. Stats. ch. 529, at 822. A former chief of classification and pay of the Personnel Division of the State Department of Administration stated in his affidavit that:

---

[2]The title of Chapter 277, 1985 Statutes of Nevada is "AN ACT relating to public employees; *confirming the exclusion of professional employees of the University of Nevada System* from the payment of additional compensation for continuous service; and providing other matters properly relating thereto." 1985 Nev. Stats. ch. 277, at 845 (emphasis added).

The concept of the [1973] longevity pay statute . . . originated with the Personnel Division. It was never the intention of the Personnel Division to include the University of Nevada's professional employees in the coverage of the longevity pay law. In fact, in helping to prepare the fiscal note for the legislature on this legislation, the Personnel Division excluded the University of Nevada's professional employees from the computations of the cost of a longevity pay plan.

. . . . The University of Nevada has always independently administered its professional employees' positions and introduced separate lump-sum appropriations bills in the legislature for the payment of its professional employees.

The University of Nevada had always claimed the right to administer its professional employees' positions separately from the Personnel Division and to establish its own compensation schedules for them, and this right had always been acquiesced in by the legislature and the Personnel Division because of the University of Nevada's claim to special constitutional status. . . .

The deputy budget director of the budget office of the Nevada Department of Administration participated in the drafting of NRS 284.177 in 1973. In his affidavit he agreed that it was never the Personnel Division's intention to include professional employees of the University of Nevada System in the coverage of NRS 284.177. The former deputy budget director explained:

The legislation as drafted by the Personnel Division did not, by its terms, specifically exclude the University of Nevada's professional employees because of the common belief in the Personnel Division and the Department of Administration that the University of Nevada's professional employees did not need to be named in any legislation which provided for the administration of employment positions by the Personnel Division.

As stated earlier, shortly after the enactment of NRS 284.177, the Personnel Division proposed, and the State Personnel Advisory Commission adopted, a rule expressly excluding University administrative and academic employees from the longevity plan. We believe that such nearly contemporaneous constructions of state statutes by administrative agencies charged with their implementation are entitled to great weight, especially when, as in the present case, the legislature fails to repudiate the agency's construction. *See* Atlantic Richfield Co. v. Federal Energy Admin.,

429 F.Supp. 1052 (N.D.Ca. 1976); *see also* Davis v. Conour, 497 P.2d 1015 (Colo. 1972); *see also* Hofmeister v. Frank Realty Co., 373 A.2d 273 (Md.App. 1977); *see also* Green River Community College v. Higher Education Personnel Bd., 622 P.2d 826 (Wash. 1980).

Finally, we are cognizant of the fact that during the entire time that NRS 284.177 has been in effect, the legislature has never appropriated money to pay the University of Nevada System's professional employees longevity pay. This may be taken as a confirmation of the legislature's original and continuing intent to exclude the professional employees of the University of Nevada System from the scope of NRS 284.177. Although not controlling, the legislature's construction of its own act is persuasive in ascertaining the act's meaning. Commercial Nat'l Bank v. Arkansas Children's Hospital, 511 S.W.2d 640 (Ark. 1974).

While our analysis proceeds along a path different from that of the district court, we reach the same conclusion and, therefore, need not disturb the district court's decision. *See* Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 632 P.2d 1155 (1981). Accordingly, we affirm the order of the district court granting summary judgment in favor of the State of Nevada, the University of Nevada System, and the regents of the University of Nevada. For the same reasons, we affirm the district court's order denying the motions of the professional employees of the University of Nevada System to alter or amend the judgment and to file an amended complaint.