789 P.2d 227 (1990)
CLARK COUNTY SOCIAL SERVICE DEPARTMENT, Clark County, Nevada, and County of Clark, Nevada, Appellants and Cross-Respondents,
v.
Everett NEWKIRK, for Himself and Those Similarly Situated, Respondent and Cross-Appellant.
No. 18903.
Supreme Court of Nevada.
March 27, 1990.
Rex Bell, Dist. Atty., Victor W. Priebe and Michael L. Douglas, Deputy Dist. Attys., Las Vegas, for appellants and cross-respondents.
Justin M. Clouser, Las Vegas, Beckley, Singleton, DeLanoy, Jemison & List and Daniel F. Polsenberg, Las Vegas, for respondent and cross-appellant.

OPINION
SPRINGER, Justice:
Everett Newkirk has been a citizen of Clark County for approximately seven years. He is sixty-four years old and lives on the streets. He sleeps in parks in the daytime, claiming that he is afraid of being killed if he sleeps there in the nighttime.
On April 23, 1986, Everett Newkirk filed an application for relief with the Clark County Social Service Department. His application shows that his request was made because he did not receive his $96.00 Social Security check. A welfare worker noted on his application that Newkirk had "foot problems due to walking the streets." Another, previous note says that, "[i]t is felt by workers if Mr. Newkirk had a place to stay his feet will be given the opportunity to heal properly and he will be able to seek employment."
Although this poor, elderly, homeless, jobless, unkempt, welfare supplicant would not appear to be "employable" on April 23, 1986, his application form, under a section saying "Employable, Yes, No," is marked "Yes."[1] On the basis of Newkirk's being *228 "employable" at the time his application was made, Newkirk was denied relief on the basis of a Social Service Department regulation that "automatically" disqualified Newkirk. "Single employable ... may not be served." Regulation II.14.B.3.
This case comes to us on summary judgment. No one contests the fact that Newkirk was poor and indigent nor that he was "automatically" refused on the ground that he was "employable." The district court granted summary judgment to Newkirk on the grounds that a Nevada statute required the county to provide relief to poor people like Mr. Newkirk, whether they were employable or not.[2] We agree with the trial court on this point and affirm the judgment of the district court.
The statute in question, NRS 428.010(1), declares that the counties in Nevada must "provide care, support and relief to the poor... ." Since Newkirk is indisputably poor, one would think that the statute requires Clark County to provide care, support and relief to him. For some reason necessarily unconnected with NRS 428.010(1), Clark County has excepted a large segment of the poor from those whom it will "serve." The "employable" unemployed are excluded from care, support and relief no matter how poor they are.
Until such time as a law is enacted which relieves counties of the responsibility of caring for its poor or until the legislature defines "poor" in such a way that unemployed people can never be said to be poor, the counties must continue to "provide care, support and relief to the poor."
The mere enacting of the mentioned administrative regulation obviously cannot countermand the statutory mandate. "Administrative regulations cannot contradict or conflict with the statute they are intended to implement." Roberts v. State, 104 Nev. 33, 752 P.2d 221 (1988). While Clark County might enact regulations setting standards of eligibility based on residence, property ownership or availability of financial resources, it cannot eliminate a large category of poor people simply by saying that single, employable, poor people "may not be served." If one is poor, however defined, one is entitled to relief under NRS 428.010(1). NRS 428.010(2) authorizes counties to prescribe uniform standards of eligibility for the poor, indigent, incompetent, aged, diseased and disabled. Counties can prescribe poverty levels, establish formalities and procedures for application and dispersement of relief, but it cannot say that "employable" people can never be poor or that people who are physically and mentally capable of seeking employment cannot be poor. Such a regulation is clearly in conflict with the state's mandate that counties care for their poor, all of their poor. See County of Lander v. Board of Trustees of Elko Gen. Hosp., 81 Nev. 354, 403 P.2d 659 (1965) (county's obligation to support poor people derives from the statutory provision imposing such a legal obligation).
As noted, we need not decide the question of due process and equal protection. As long as the state requires the counties to give relief to poor people, the county must do so. Newkirk is a poor person; therefore, Clark County must provide care and support and relief. It is as simple as that.[3] The district court was correct in *229 ruling that the regulation was inconsistent with the statute. Persons who are poor yet single and "employable," whatever that term may mean, cannot be categorically excluded from welfare benefits. The trial court's judgment in this regard will be affirmed.[4]
We also agree with the district court in denying retroactive benefits to Newkirk and to the class. Those who were denied benefits by reason of application of the improper county regulation are indeed an amorphous group and not amenable to being identified as class plaintiffs. We think that the district court acted reasonably and properly in refusing to give retroactive effect to the judgment for the benefit of Newkirk or the class.
The judgment of the trial court is affirmed on the ground that Clark County Social Service Department Regulation II. 14.B.3 is invalid. Newkirk is eligible for indigent relief if he is in compliance with Clark County eligibility rules for relief to the poor other than Regulation II.14.B.3. The cross-appeal will be dismissed.
MOWBRAY and ROSE, JJ., concur.
STEFFEN, Justice, with whom YOUNG, Chief Justice, agrees, dissenting:
The majority opinion, having emphasized the pathetic, impoverished and demeaning circumstances surrounding the daily existence of Everett Newkirk, has forced us into an unwanted but necessary and seemingly calloused position of defending our system of government in general and the role of the judicial branch in particular. Even as we dissent, we share the concern and empathy of our brethren in the majority over the sub-human plight of Mr. Newkirk and others who struggle without home or hearth, and in utter penury, to merely survive. Nevertheless, we believe it is vital that we remind ourselves as judicial officers that we do not appropriate or allocate public monies. Nor do we establish public policy concerning the priority to be placed on the limited assets of the public fisc. Elected representatives of our state citizenry determine as state and local legislative bodies the extent to which individuals, corporations and other entities will be taxed to raise public revenues to fund the demands of government. Our legislative bodies then determine which and to what extent the many competing societal needs may be addressed.
The proper jurisdiction of this court seems clear. Setting aside the personal plight of Mr. Newkirk, as we believe we must, the single issue on appeal is whether Clark County may deny public assistance to employable single individuals and employable childless couples. Stated otherwise, the issue is whether the county may establish standards of eligibility for general welfare assistance. We are of the opinion that the issue, thus presented, must be answered in the affirmative.
Clark County contends that the district court erred in its ruling because the Nevada *230 Legislature authorized Nevada counties to establish standards of eligibility for general welfare assistance; therefore, promulgation of a county regulation precluding employable single individuals and employable childless couples was appropriate. We agree.
Newkirk is a single unemployed resident of Clark County. In April, 1986, Newkirk applied to the Clark County Social Services Department for welfare benefits. On April 23, 1986, without a hearing, Newkirk was denied financial assistance. In denying relief, Clark County relied upon Clark County Social Service Department Manual Rule II.14.B.3, "[s]ingle employables or employable childless couples may not be served."
Newkirk filed a complaint in district court seeking declaratory and injunctive relief. Newkirk claimed that he represented a class of people who had been denied county financial assistance pursuant to Rule II.14.B.3 and that the rule was both unconstitutional and inconsistent with relevant Nevada welfare statutes. The district judge certified the class, ruling that in the event he found in favor of Newkirk and the class, no retroactive benefits would be awarded.
Newkirk eventually moved for summary judgment. Although the motion was denied, the parties later stipulated that there were no genuine issues of material fact and that only legal issues remained. Thereafter, the district court concluded that Rule II.14.B.3 was inconsistent with NRS 428.010 and NRS 428.030 and was therefore invalid, and also that it violated the equal protection clause. The district court further determined that Newkirk had been denied due process of law. Summary judgment was entered in Newkirk's favor and Clark County was permanently enjoined from denying financial assistance to applicants under Rule II.14.B.3. The district court thereafter entered a stay pending appeal by Clark County and cross-appeal by Newkirk.
We agree that it is necessary to determine whether Rule II.14.B.3 is inconsistent with NRS 428.010[1] and NRS 428.030[2]. Specifically, this court has previously held that "[a]dministrative regulations cannot contradict or conflict with the statute [or *231 statutes] they are intended to implement." Roberts v. State University, 104 Nev. 33, 37, 752 P.2d 221, 223 (1988). Thus, Rule II.14.B.3 may not deny relief to single employables and employable childless couples unless in so doing it conforms to the original legislative intent underlying NRS 428.010 and NRS 428.030. See Hager v. Nev. Med. Legal Screening Panel, 105 Nev. ___, 767 P.2d 1346, 1347 (1989); Roberts, 104 Nev. at 37, 752 P.2d at 223. Legislative intent is to be determined from the specific statutory language if it is clear and unambiguous on its face. Hager, 105 Nev. at ___, 767 P.2d at 1347. Statutory language is ambiguous if it is capable of being understood in two or more senses by reasonably informed persons. Id. If ambiguous, the legislative intent behind a statute can be derived from reason and public policy. Roberts, 104 Nev. at 37, 752 P.2d at 223.
We are convinced that there is no inconsistency between the two statutes, NRS 428.010 and 428.030, and Rule II.14.B.3. In our view, neither the majority's nor Newkirk's perspective on the issue considers the statutes in their entirety. NRS 428.010(1) commences with a recognition that the county welfare pie is of a limited dimension. Thus, counties are enjoined to care for, inter alia, the poor "[t]o the extent that moneys may be lawfully appropriated by the board of county commissioners...." The same subparagraph of the statute also specifies the statute (under the current amendment, statutes) that defines and limits the extent of taxes that may be lawfully levied for welfare purposes. It is thus important to understand that counties have not received unlimited authority to raise taxes to provide relief to every potential welfare recipient who could fall within the circumference of a circle drawn to encompass everyone in need of welfare assistance.
Having circumscribed the counties' authority to levy taxes for welfare purposes, the Legislature recognized that counties necessarily would have to place priorities on those who would be eligible to receive welfare assistance. As a result, with the exception of health care, boards of county commissioners were empowered to establish policies, standards, and uniform standards of eligibility concerning welfare assistance. NRS 428.010(2).
Unfortunately, the majority has, by judicial fiat, interfered with the legislative scheme by eliminating a system of priority eligibility and substituting therefor an open-ended requirement that encompasses all who may fall within the undefined category of "poor." The majority position has rendered meaningless the statutory limitation contained in the language of NRS 428.030 providing that "[w]hen any poor person meets the uniform standards of eligibility ... established by the board of county commissioners then such poor person shall receive such relief as is in accordance with the policies and standards established and approved by the board of county commissioners and within the limits of the funds which may be lawfully appropriated... for this purpose." By obvious implication, the Legislature excluded from welfare assistance the poor who fail to meet eligibility criteria.
In summary, it seems clear to us that the Legislature has: (1) limited by law the amount of welfare monies counties may raise for welfare purposes; (2) empowered boards of county commissioners to adopt regulations determining among classes of potential welfare recipients those who will be eligible for assistance; and (3) authorized boards of county commissioners to provide welfare assistance to those determined by county regulation to be eligible, to the extent lawfully appropriated funds are available.
By changing the statutory scheme to require counties to provide welfare assistance to all persons who are poor rather than those who satisfy a county's eligibility standards, the majority has done nothing, of course, to expand the pool of welfare assets available to service the poor. Tragically, the inevitable result of the majority's ruling will be a necessary reduction in welfare assistance to those who are most desperately in need of such assistance. Although Newkirk's plight is lamentable, at least he is apparently in a position physically *232 and mentally to assuage his suffering by means of his own efforts. The infirm, incompetent and incapacitated, on the other hand, do not have the capacity to even attempt to be masters of their own fate. It is therefore understandable why the Clark County Board of County Commissioners elected to divide the limited welfare pie among those unfortunates who are not in a position to extricate themselves from their necessitous circumstances by their own will and labor.
Because the majority now obligates the counties to include poor singles and childless couples who are employable within the finite reaches of their welfare assistance pool, we must presume that the needy infirm, aged, incompetent, and incapacitated, among others, will be forced to survive on less than they have previously received. We therefore would encourage the Legislature to react with some dispatch, or at least in accordance with the dictates of the actual financial predicaments Clark County and other Nevada counties may now encounter, to alleviate the problems resulting from the majority's ruling.
Ideally, all of the deserving and needy persons in our society should be provided with sufficient food, clothing and shelter. At present, however, countless persons must suffer undue hardship because of societal imperfections and shortages. The problems confronting our society in these areas are severe, and governments must be afforded considerable latitude in attempting to address and resolve them. See New York Dept. of Social Services v. Dublino, 413 U.S. 405, 413, 93 S.Ct. 2507, 2512, 37 L.Ed.2d 688 (1973).
Although the majority has found it unnecessary to treat the constitutional issues raised by Newkirk, we merely note in passing that we discern no constitutional impediments to the county's implementation of the authority delegated to it by the Legislature. Moreover, because in our view the majority has destroyed the latitude the Legislature has purposely and wisely conferred upon county boards of commissioners, we are compelled to register our dissent.[3]
YOUNG, C.J., concurs.
NOTES
[1] The designation "employable" which automatically rendered Newkirk ineligible for assistance gives rise to concern because the word is not defined in the regulations. In the case before us although the welfare worker apparently checked the "Yes" box, indicating that Newkirk was employable, that he really was unemployable is problematical. Newkirk's deposition shows that around September of 1985 he had been offered a job but that he did not feel suited for it. He has been searching for work ever since. When asked how many jobs he had applied for in Las Vegas, he said (in his deposition): "Probably a hundred. The state employment office sent me and chasing them ads in the paper and just on my own." "I've been to so many places I forgot I have even been in the damned place." At the time of the application he had been out of work for a year. His feet were sore from walking the streets. He was unkempt and unbathed. Perhaps he was "employable." At least we have to assume so for the purposes of this appeal.
[2] A number of constitutional questions were raised by Newkirk and considered by the trial court. In view of the nature of our disposition of the appeal it will not be necessary to reach these constitutional questions.
[3] The California case of Mooney v. Pickett, 4 Cal.3d 669, 94 Cal. Rptr. 279, 483 P.2d 1231 (1971), is directly on point. By statute, California, very much like Nevada, requires local government to give support to "incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident." San Mateo County enacted a regulation saying that "[g]enerally speaking, employable persons are not eligible." The California Supreme Court ruled, as we do now, that the county had broad discretion "to determine eligibility for, the type and amount of, and the conditions to be attached to indigent relief"; still, such discretion must be exercised so as to conform to the purposes and mandates of the underlying statute. Mooney, 94 Cal. Rptr. at 283, 483 P.2d at 1235. The statute clearly required San Mateo County to provide for persons who were poor; consequently, any kind of "employable single man rule" was held to be inconsistent with the statute. The court in Mooney employed the following significant language:

A rule excluding from its scope all unmarried employable persons, without regard for the practical impossibility of obtaining employment in a depressed labor market, leaves such individuals without any source of relief whatsoever  a result inconsistent with the language and purpose of section 17000 and other statutes establishing General Assistance relief.
Id. 94 Cal. Rptr. at 288, 483 P.2d at 1239.
[4] The dissent defines the "single issue on appeal" as being whether a county government "may deny public assistance to employable single individuals and employable childless couples." The very simple answer to the question is that counties may not deny public assistance to employable individuals and couples if they are in fact poor. Nevada law requires counties to provide care to the poor, and certainly a person can be employable and also poor. We certainly would have no quarrel with a legislative scheme that would fairly and systematically exclude from welfare benefits single employable persons who unreasonably refused to accept employment, but this is not the same as excluding all persons who are physically and mentally able to work even though their "poorness" may have been created by circumstances entirely beyond their control.
[1] NRS 428.010, when considered by the district court, read as follows:

1. To the extent that moneys may be lawfully appropriated by the board of county commissioners for this purpose pursuant to NRS 428.050, every county shall provide care, support and relief to the poor, indigent, incompetent and those incapacitated by age, disease or accident, lawfully resident therein, when such persons are not supported or relieved by their relatives or guardians, by their own means, or by state hospitals, or other state, federal or private institutions or agencies.
2. The boards of county commissioners of the several counties are vested with the authority to establish and approve policies and standards, prescribe a uniform standard of eligibility, appropriate funds for this purpose and appoint agents who will develop rules and regulations and administer these programs for the purpose of providing care, support and relief to the poor, indigent, incompetent and those incapacitated by age, disease or accident.
Although this statute has been subsequently amended, the analysis contained in this dissent remains unaffected by the modifications.
[2] NRS 428.030, when considered by the district court, read as follows:

1. When any poor person meets the uniform standards of eligibility established by the board of county commissioners and does not have relatives of sufficient ability to care for and maintain such poor person, or when such relatives refuse or neglect to care for and maintain such person, then such poor person shall receive such relief as is in accordance with the policies and standards established and approved by the board of county commissioners and within the limits of the funds which may be lawfully appropriated pursuant to NRS 428.050 for this purpose.
2. The board of county commissioners may:
(a) Make contracts for the necessary maintenance of poor persons;
(b) Appoint such agents as the board may deem necessary to oversee and provide the necessary maintenance of poor persons;
(c) Authorize the payment of cash grants direct to poor persons for their necessary maintenance; or
(d) Provide for the necessary maintenance of poor persons by the exercise of the combination of one or more of the powers specified in paragraphs (a), (b) and (c) of this subsection. (Emphasis added.)
Although this statute has been subsequently amended, the analysis contained in this dissent remains unaffected by the modifications.
[3] The majority has decreed that until counties are lawfully relieved of the obligation to care for their poor or "until the legislature defines `poor' in such a way that unemployed people can never be said to be poor," counties will be required to care for all of their poor. Notwithstanding the majority's "all or nothing" edict, it was enheartening to note their contradictory position in response to our dissent (footnote 4 of majority opinion) where the majority condescends to having "no quarrel" with a legislative scheme that would deny welfare assistance to single employables who will not accept employment. We are enheartened by the majority's willingness to grant some latitude to the legislative branch of government in its policy decisions concerning social welfare.

This footnote is simply dedicated to the proposition that it is evident under our system of government why elected legislative bodies are given the responsibility of establishing social policy and appropriating funds to implement the policies thus established. Courts should assiduously avoid interfering with legislative enactments that are not constitutionally prohibited.