138 Nev., Advance Opinion 15

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE NEVADA INDEPENDENT, Appellant, vs. RICHARD WHITLEY, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES; THE STATE OF NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES; AND SANOFI-AVENTIS U.S. LLC, Respondents. | No. 81844 |



Appeal from a district court order denying a petition for a writ of mandamus in a public records matter. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

Robert L. Langford & Associates and Matthew J. Rashbrook and Robert L. Langford, Las Vegas,
for Appellant The Nevada Independent.

Aaron D. Ford, Attorney General, Heidi Parry Stern, Solicitor General, Steve Shevorski, Chief Litigation Counsel, and Akke Levin, Senior Deputy Attorney General, Carson City,
for Respondents Richard Whitley and the State of Nevada Department of Health and Human Services.

Bailey Kennedy and John R. Bailey, Dennis L. Kennedy, Sarah E. Harmon, and Rebecca L. Crooker, Las Vegas,
for Respondent Sanofi-Aventis U.S. LLC.

22-09212

McCracken, Stemerman & Holsberry, LLP, and Richard G. McCracken and Paul L. More, San Francisco, California, for Amicus Curiae Culinary Workers Union Local 226.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, C.J., STIGLICH and SILVER, JJ.

## OPINION

By the Court, STIGLICH, J.:

Nevada's public records law shines a light on government conduct. It permits Nevadans insight into whether the officials they elected are holding true to their promises. But this law's illumination ends where statutory confidentiality provisions begin.

In this appeal, we consider whether the federal Defend Trade Secrets Act (DTSA) prohibits disclosure, under the Nevada Public Records Act (NPRA), of documents from pharmaceutical companies and pharmacy benefit managers collected under S.B. 539. The Nevada Independent (TNI) petitioned the district court to order the Department of Health and Human Services (DHHS) to release such documents, arguing that the documents constituted public records that must be made available to it. The district court determined that the information in these documents comprised trade secrets protected under the DTSA and that the documents thus were not subject to disclosure under the NPRA. TNI appeals the district court's order.

As a matter of first impression, we hold that because the DTSA classifies these requested documents, obtained pursuant to S.B. 539, as

confidential trade secrets, these documents are shielded from disclosure under the NPRA.

## BACKGROUND

Most states, including Nevada, have adopted some form of the Uniform Trade Secrets Act. *See* NRS Chapter 600A. To compliment these state trade secret laws, Congress, in 2016, amended the Economic Espionage Act of 1996 by passing the DTSA to further ensure trade secret protections in national and global economies. H.R. Rep. No. 114-529 (2016), *as reprinted in* 2016 U.S.C.C.A.N. 195, 198. The DTSA created a federal cause of action for misappropriation of trade secrets and defined "misappropriation" to include disclosure of a trade secret without the owner's consent, among other things. 18 U.S.C. §§ 1836, 1839(5)(b). Like the uniform act, the DTSA classifies as trade secrets information (A) that the owner has taken "reasonable measures" to keep secret and (B) that "derives independent economic value" from "not being generally known to" or "readily ascertainable through proper means" by an entity that can economically benefit from the information's disclosure or use. 18 U.S.C. § 1839(3).

One year later, in responding to the rapidly increasing price of insulin for Nevada residents, then-Governor Brian Sandoval signed into law S.B. 539. 2017 Nev. Stat., ch. 592. That bill, now codified in NRS 439B.600-.695, requires pharmaceutical manufacturers and pharmacy benefit managers (PBMs) to submit to DHHS documentation regarding the cost structure of insulin medication in Nevada. As relevant here, S.B. 539 requires DHHS to compile lists of essential diabetes medications, manufacturers to report the pricing information of these drugs and justify

any price increases, and PBMs to disclose the rebates they negotiate. NRS 439B.630-.645.

Importantly, S.B. 539 also amended Nevada's version of the Uniform Trade Secrets Act to exclude from trade secret protections "any information" that a manufacturer or PBM is required to report per S.B. 539. NRS 600A.030(5)(b). Nevertheless, after S.B. 539 was passed, two organizations representing pharmaceutical companies sued Governor Sandoval, DHHS Director Richard Whitley, and the Nevada Legislature, claiming that S.B. 539's elimination of trade secret protections is preempted by the DTSA and is constitutionally suspect. The case was dismissed after DHHS promulgated regulations, NAC 439.730-.740, to harmonize S.B. 539, the NPRA, and the DTSA.

A reporter for TNI thereafter made a public records request to DHHS for all reports submitted by pharmaceutical manufacturers and PBMs under S.B. 539. Relevant here, TNI sought the names of pharmaceutical manufacturers and PBMs that submitted annual reports pursuant to S.B. 539, and the annual reports themselves.[1] DHHS responded by providing the names of manufacturers and PBMs and some general information about the diabetes drugs but did not disclose other parts of the Manufacturer Essential Diabetes Drug Reports, including (1) the cost of producing the drug, (2) the total administrative expenditure

---

[1]TNI also requested written opinions by the Nevada Attorney General's Office regarding S.B. 539's implementation in 2017. DHHS did not produce these opinions, a decision which TNI does not challenge on appeal. We therefore do not consider it. *See Las Vegas Review Journal v. City of Henderson*, 137 Nev., Adv. Op. 81, 500 P.3d 1271, 1275 (2021) (determining that an issue not raised in an appellant's opening brief need not be considered).

relating to the drug, and (3) the profit margin the manufacturer earned by producing the drug. DHHS explained that, proceeding under NAC 439.730-.740, it believed disclosing this information would constitute misappropriating trade secrets under the DTSA, such that this information was confidential and not subject to release under the NPRA. TNI and DHHS subsequently exchanged another similar request and response.

As a result of DHHS's refusal to provide the requested information, TNI filed a mandamus action in the district court to compel disclosure under the NPRA, also challenging the validity of NAC 439.730-.740. Sanofi-Aventis U.S. LLC, a pharmaceutical company that submitted records pursuant to S.B. 539, moved to intervene, which the district court allowed. Sanofi thereafter presented an affidavit from its Vice President and Head of Diabetes and Primary Care Sales, James Borneman, who attested to the steps Sanofi takes to safeguard its trade secrets and the potential economic hardship Sanofi would suffer from the trade secrets' disclosure. For example, Borneman affirmed that pricing inputs and rationale are restricted internally within Sanofi and are shared on a need-to-know basis only, subject to nondisclosure agreements. The public disclosure of this information, Borneman declared, could be used by Sanofi's competitors and customers in, *inter alia*, price negotiations with insurers to Sanofi's financial detriment. TNI moved to compel Borneman's testimony or in the alternative to strike his affidavit from the record. The district court denied this motion.

The district court then denied TNI's writ petition. The district court determined that "[t]he DTSA's definition for trade secrets places these reports squarely under confidentiality protections," since DHHS demonstrated that the reports are subject to reasonable efforts to maintain

their secrecy and that the reports derive independent economic value from such secrecy. *See* 18 U.S.C. § 1839(3). Next, the district court found that NAC 439.730-.740 are valid regulations because DHHS has broad discretion to develop regulations that "foster efficient enforcement of codified legislation" (in this case, S.B. 539) and DHHS reasonably interpreted the governing statute in adopting the regulations. The district court opined that these regulations ensured that NPRA requests for information DHHS had gathered due to S.B. 539 did not run afoul of the DTSA because, while the regulations' "confidentiality protections are not automatic," they ensured that the affected entity had the opportunity to contest the release of what it believes to be confidential information in court. This appeal followed.

## DISCUSSION

*TNI has not demonstrated that NAC 439.730-.740 are invalid regulations*

TNI contends that NAC 439.735 and NAC 439.740 are invalid regulations because they were not authorized by the Nevada Legislature, conflict with S.B. 539, and "operate as a line-item veto over the NPRA."[2] We disagree.

NRS 439B.685 allows DHHS to adopt regulations it deems "necessary or advisable to carry out the provisions of NRS 439B.600 to 439B.695, inclusive." Relevant here, DHHS utilized this enabling provision to promulgate NAC 439.735 and NAC 439.740 to harmonize the NPRA, S.B. 539, and the DTSA. NAC 439.735(1) permits a manufacturer or PBM to

---

[2]TNI also argues that NAC 439.730 is invalid but does not cogently argue this point or support it with salient authority. We therefore decline to consider it. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

submit a request for confidentiality to DHHS to prevent public disclosure of any information it reasonably believes could lead to the misappropriation of a trade secret under the DTSA. The requesting manufacturer or PBM must describe the information it seeks to protect with particularity and explain why public disclosure would lead to misappropriation of a trade secret under the DTSA. NAC 439.735(2)(a)-(b). DHHS must determine whether it agrees with this assessment if it receives an NPRA request for the ostensibly confidential information. NAC 439.735(3). If DHHS agrees with the manufacturer's or PBM's assessment, it must deny the NPRA request. NAC 439.735(4). However, if DHHS does not agree, then it must provide the manufacturer or PBM a period of 30 days before releasing the information to allow the affected entity the opportunity to challenge DHHS's determination in court. NAC 439.735(5). NAC 439.740 requires DHHS to include only aggregated data that does not disclose the identity of any manufacturer or PBM in its public reports submitted pursuant to NRS 439B.650 and descriptions of trends in prescription drugs and how those prices affect the prevalence and severity of diabetes in Nevada and healthcare in the state more generally.

Agency regulations are presumed valid. *See* NRS 233B.090; *Montage Mktg., LLC v. Washoe County ex rel. Washoe Cty. Bd. of Equalization*, 134 Nev. 294, 297, 419 P.3d 129, 131 (2018). And this court generally defers to an agency's interpretation of a statute that the agency is tasked with enforcing. *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 293, 995 P.2d 482, 485 (2000). It is well established, however, that "[a]dministrative regulations cannot contradict or conflict with the statute they are intended to implement." *Roberts v. State*, 104 Nev. 33, 37, 752 P.2d 221, 223 (1988); *accord Clark Cty. Social Serv. Dep't v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*Newkirk*, 106 Nev. 177, 179, 789 P.2d 227, 228 (1990). Where an agency regulation directly conflicts with the unambiguous language of the statute, a court may invalidate it. *See Newkirk*, 106 Nev. at 179, 789 P.2d at 228.

Contrary to TNI's allegation, NAC 439.735 does not contradict S.B. 539. First, NRS 439B.685's unambiguous language, while not specifically directing DHHS to protect the confidentiality of these documents, nonetheless authorizes DHHS to promulgate these regulations. *See Newkirk*, 106 Nev. at 179, 789 P.2d at 228. Although TNI contends that NAC 439.735 "invit[es] unelected members of the executive branch to make judicial determinations regarding confidentiality" and delays production of public records in violation of the NPRA, we determine that its claims are unfounded. NAC 439.735 does not act as a unilateral bar on disclosure of documents otherwise entitled to be part of the public record. It merely creates a process by which DHHS can determine whether the requested records fall within the DTSA's protection of trade secrets. Should DHHS determine that the DTSA does not afford the records such protection, NAC 439.735 places the burden on the pharmaceutical company or PBM to challenge the DHHS's determination in court. Likewise, any DHHS determination that the requested records are confidential can be contested by the requester in court. *See* NRS 239.011. It is the district court judge, therefore, that makes the ultimate determination regarding confidentiality, not DHHS. In fact, TNI concedes in its reply brief that NAC 439.735 presents no bar to the production of the requested records. In sum, TNI has not overcome the presumption that NAC 439.735 is valid, and we therefore defer to DHHS's interpretation of S.B. 539. *See* NRS 233B.090; *Montage*

*Mktg., LLC*, 134 Nev. at 297, 419 P.3d at 131; *State Farm Mut. Auto. Ins. Co.*, 116 Nev. at 293, 995 P.2d at 485.[3]

TNI next contends that NAC 439.740 directly conflicts with the Legislature's intent in passing S.B. 539 to create transparency in the market for diabetic medication. It argues that the Legislature did not grant DHHS the authority to promulgate NAC 439.740 and exempt material from public disclosure. Not so.

This court first looks to the plain language of a statute when interpreting a statutory provision. *Clay v. Eighth Judicial Dist. Court*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013). Where a statute is unambiguous, we do not go beyond it to divine legislative intent. *Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983).

Here, the plain language of NRS 439B.650 is clear. It requires DHHS to analyze the reports submitted by pharmaceutical companies and PBMs and compile its own report documenting such analysis. It does not, as TNI maintains, prohibit DHHS from anonymizing the data it collects per S.B. 539. Thus, NAC 439.740 does not conflict with NRS 439B.650, and DHHS had the authority to promulgate the regulation under NRS 439B.685. Therefore, we conclude that TNI's challenge of NAC 439.740 fails as well.[4]

---

[3]TNI alternatively argues that NAC 439.735 leads to an unreasonable delay in the production of public records by providing pharmaceutical companies and PBMs 30 days to respond to NPRA requests. However, it does not provide salient authority on how this process leads to an unreasonable delay under the NPRA, so we do not consider it. *See Edwards*, 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38.

[4]As with NAC 439.735, TNI maintains NAC 439.740 delays public record requests under the NPRA but fails to cogently demonstrate how so.

SUPREME COURT
OF
NEVADA

(O) 1947A

*The district court did not abuse its discretion by admitting James Borneman's declaration*

TNI next contends that the district court abused its discretion by admitting Borneman's declaration after determining the declaration was not based solely on his personal knowledge. We determine that the admission of Borneman's declaration was proper.

A lay witness may testify on a matter if the witness has personal knowledge of the matter to which he or she is testifying. NRS 50.025(1)(a). Personal knowledge may come from a witness's review of files and records, *Wash. Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993), or be inferred from the witness's position, *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). We review the district court's decision to admit or exclude evidence for an abuse of discretion. *M.C. Multi-Family, LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). A district court abuses its discretion when its decision is "in clear disregard of the guiding legal principles." *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014) (internal quotation marks omitted).

Borneman proffered a declaration as Sanofi's Vice President and Head of Diabetes and Primary Care Sales about the confidential information included in Sanofi's reports, the steps Sanofi takes to safeguard its trade secrets, and the potential economic hardship Sanofi would suffer if the trade secrets were publicly disclosed. Two paragraphs of Borneman's six-page declaration were recited almost verbatim from Sanofi's website and

---

We therefore do not consider this claim. *See Edwards*, 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38.

 

from the testimony of other Sanofi employees; these paragraphs discussed Sanofi's headquarters and mission statement.

As Head of Diabetes and Primary Care Sales for Sanofi, Borneman's personal knowledge of Sanofi's procedures regarding its protection of trade secrets language may be inferred. *See In re Kaypro*, 218 F.3d at 1075. Furthermore, personal knowledge may be presumed because Borneman had access to Sanofi's files and records in preparing his declaration. *See Wash. Cent. R.R. Co.*, 830 F. Supp. at 1353. Therefore, given the broad discretion that the district court enjoys in its admission of evidence, its refusal to strike the declaration was proper, despite its conclusion that Borneman did not testify solely from personal knowledge. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 598-99, 245 P.3d 1198, 1202 (2010) (holding that "[t]his court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason"); *M.C. Multi-Family*, 124 Nev. at 913, 193 P.3d at 544.

*The district court did not abuse its discretion by denying the writ petition*

The gravamen of this appeal is TNI's claim that the district court abused its discretion by determining that the requested records are trade secrets under the DTSA. The DTSA classifies as trade secrets information (A) that the owner has taken "reasonable measures" to keep secret and (B) from which the owner "derives independent economic value" that is not "readily ascertainable through proper means" by an entity that can obtain economic benefit from the information's disclosure. 18 U.S.C. § 1839(3). "[T]he definition of what may be considered a 'trade secret' is broad." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). The government bears the burden of demonstrating by a preponderance of the evidence that the public records at issue are

SUPREME COURT OF NEVADA

(O) 1947A

11

confidential. NRS 239.0113; *Pub. Emps.' Ret. Sys. of Nev. v. Nev. Policy Research Inst., Inc.*, 134 Nev. 669, 671, 429 P.3d 280, 283 (2018). We review a district court's decision to deny a writ petition for an abuse of discretion, but we review its decision de novo where the petition raises a question of statutory interpretation. *Reno Newspapers, Inc. v. Haley*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010).

The first inquiry into whether information is a protected trade secret is whether its owners have taken "reasonable measures" to keep the information secret. 18 U.S.C. § 1893(3). Owners of proprietary information may take a variety of approaches that constitute "reasonable measures" to protect their trade secrets. For example, the Ninth Circuit has noted that "[c]onfidentiality provisions constitute reasonable steps to maintain secrecy." *InteliClear*, 978 F.3d at 660 (citing *MAI Sys. Corp. v. Peak Comput.*, 991 F.2d 511, 521 (9th Cir. 1993)). It is well-established that a confidential disclosure of a trade secret to an employee does not negate the disclosed information's status as a trade secret. *Id.* at 661; *United States v. Nosal*, 844 F.3d 1024, 1043-44 (9th Cir. 2016); *United States v. Chung*, 659 F.3d 815, 825-26 (9th Cir. 2011).

We determine that the district court appropriately concluded that the measures that manufacturers and PBMs have taken to protect their information are sufficient to meet the first prong of the DTSA. The district court noted that DHHS places significant limitations on who has access to the requested records and privatizes the information that is shared, and that manufacturers and PBMs have submitted requests for confidentiality to prevent the release of their trade secrets. This analysis is further bolstered by Borneman's declaration. In it, he notes that Sanofi restricts access to pricing information and rationale. He mentions that

Sanofi shares this proprietary information only on a need-to-know basis and further protects these secrets by entering into nondisclosure agreements with employees who have access to them. In sum, these confidentiality provisions are sufficient to constitute "reasonable measures" at preserving the information's secrecy under the DTSA. *Cf. InteliClear*, 978 F.3d at 660-61.

In the alternative, TNI maintains that manufacturers and PBMs have waived any trade secret protections they may have had by voluntarily submitting the requested documents to DHHS, relying on *Amgen, Inc. v. California Health Care Services*, 260 Cal. Rptr. 3d 873 (Ct. App. 2020). In *Amgen*, the California Court of Appeal considered whether pharmaceutical manufacturers lose trade secret protection for the price-increase notices they submit pursuant to California S.B. 17. *Id*. at 876-77. In relevant part, S.B. 17 requires manufactures to provide 60 days' notice to PBMs of an increase in drug prices. *Id*. at 878-79. The PBMs are required to notify large purchasers (i.e., those who provide coverage to over 500 people) of the price increase. *Id*. A news entity made a public records request under California's analog to the NPRA for the price-increase notices. *Id*. at 877. Amgen filed a petition for writ of mandamus, invoking state trade secret privilege to block disclosure. *Id*. The court held that Amgen's disclosure of the price increases to the purchasers eroded the documents' trade secret protections, since no statutory or regulatory provision "requires the purchasers to keep the price increase notices confidential or otherwise restricts the purchasers' use of the information in the notices." *Id*. at 879.

We are unpersuaded by TNI's citation to *Amgen*. Nevada law differs from California's with respect to trade secret protections. Whereas

SUPREME COURT
OF
NEVADA

(O) 1947A

13

the California statutory and regulatory provisions did not provide confidentiality protection for the requested information in *Amgen*, NAC 439.735 permits manufacturers and PBMs to request confidentiality for any information they submit to DHHS that they believe constitutes a trade secret. *See Amgen*, 260 Cal. Rptr. 3d at 879; *cf. Food Mktg. Inst. v. Argues Leader Media*, ___ U.S. ___, ___, 139 S. Ct. 2356, 2366 (2019) (determining that information is confidential where it is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy"). Furthermore, it is fundamentally unfair to conclude that a manufacturer or PBM waives its trade secret protections in the requested records by submitting them to DHHS pursuant to S.B. 539—a mandate it is powerless to ignore. *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 149 (D.C. Cir. 2001) (concluding that an agency's legal authority to obtain records from a private party dictates whether the submission of those records is mandatory).[5] Therefore, because manufacturers and PBMs turned over these documents with the expectation of confidentiality, such disclosure is not inconsistent with our determination that the company has taken "reasonable measures" to keep the information secret with respect to the DTSA. *See InteliClear*, 978 F.3d at 660-61.

We next consider the second step of the DTSA's trade secret test, which considers whether the owner derives economic value from the information's nondisclosure and whether the information is not "readily ascertainable through proper means" by an entity that can obtain economic

---

[5]Indeed, NRS 439B.695 provides that DHHS may impose an administrative penalty on noncompliant manufacturers and PBMs for each day of their failure to conform with S.B. 539's disclosure requirements.

benefit from the information's disclosure. 18 U.S.C. § 1839(3). TNI contends that the requested documents, which contain pricing information on insulin medications, cannot be considered trade secrets because they do not provide economic value to the manufacturers and PBMs. TNI argues that no manufacturer enjoys an economic advantage from keeping insulin prices secret, pointing out that two manufacturers listed their insulin medications at identical prices in 2016. Because manufacturers list identical prices for the same insulin medication, TNI maintains that they enjoy no economic benefit from keeping those prices secret.

We determine that the district court was within its discretion to conclude that the requested records, which identified "drug cost structure, marketing and advertising costs, rebate strategies, and profit information," comprised trade secrets under the DTSA because the manufacturers and PBMs "derive[ ] independent economic value . . . from [this information] not being generally known." 18 U.S.C. § 1839(3)(B). TNI's pointing to two different manufacturers listing insulin at the same price in 2016 is insufficient to prove that manufacturers do not derive economic value from the secrecy of their pricing regime, or even that every manufacturer prices insulin identically. Even if manufacturers did price insulin identically, Borneman's declaration attests to the fact that manufacturers could still glean an economic advantage over others by becoming privy to their costs and expenses during production and marketing. And even though the fact that two manufacturers priced insulin identically is part of the public record, this does not deprive the manufacturers' pricing scheme, more generally, from trade secret protection. *See Mallet & Co., Inc. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021) ("[I]nformation will not necessarily be deprived of protection as a trade

secret because parts of it are publicly available."). Thus, we conclude that the district court appropriately determined that manufacturers and PBMs gain an economic benefit by keeping the requested documents confidential from their competitors and the public.

As we have noted before, "[t]he obligation to disclose . . . is not without limits." *Republican Att'ys Gen. Ass'n v. Las Vegas Metro. Police Dep't*, 136 Nev. 28, 31, 458 P.3d 328, 331 (2020). Since we hold that these documents are declared by law (i.e., the DTSA) to be confidential trade secrets, we conclude that they are exempt from disclosure under the NPRA. *See* NRS 239.010(1) (permitting public examination of governmental records unless those records are "declared by law to be confidential"); *Republican Att'ys Gen. Ass'n*, 136 Nev. at 31, 458 P.3d at 331 ("[T]he NPRA yields to more than 400 explicitly named statutes, many of which prohibit the disclosure of public records that contain confidential information.").

We therefore conclude that the district court's denial of the writ petition was within its discretion. On the facts before us in the record, DHHS has demonstrated that the requested records satisfy the DTSA's two-step test for confidentiality by showing that manufacturers and PBMs have taken reasonable measures to shield the requested records from disclosure and that these entities derive economic value from the requested records' secrecy.[6]

---

[6]TNI also contends that the Eleventh Amendment's sovereign immunity protects DHHS and Whitley from suit in federal court if they release the requested records. Since we determine that the requested records are exempt from disclosure, we need not consider this hypothetical issue. *See Echeverria v. State*, 137 Nev., Adv. Op. 49, 495 P.3d 471, 475 (2021) (reaffirming that this court lacks the authority to issue advisory opinions).

## CONCLUSION

The NPRA permits the disclosure of government documents that are not declared by law to be confidential. In this opinion, we hold that the requested documents are confidential under the DTSA and are thus exempted from disclosure under the NPRA. We also determine that TNI has not demonstrated that NAC 439.730-.740 are invalid regulations and that the district court reached the correct outcome in admitting James Borneman's declaration. For these reasons, we affirm the district court's judgment.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Silver