**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTELICLEAR, LLC,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>ETC GLOBAL HOLDINGS, INC.,<br>*Defendant-Appellee.* | No. 19-55862<br><br>D.C. No.<br>2:18-cv-10342-<br>RGK-SK<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted September 3, 2020
Pasadena, California

Filed October 15, 2020

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

## SUMMARY[**]

### Trade Secrets

The panel reversed the district court's grant of summary judgment in favor of ETC Global Holdings, Inc. in an action alleging that ETC misused InteliClear, LLC's securities trading tracking system.

InteliClear brought claims for trade secret misappropriations under both the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act.

The panel held that there was a genuine issue of material fact as to whether InteliClear identified its trade secrets with sufficient particularity. The panel further held that a jury properly instructed could make the determination of what trade secrets existed, before addressing other elements of the claim.

Under the DTSA, a required element of a trade secret is that the owner "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3). The panel held that there was a triable issue whether InteliClear had shown that parts of the InteliClear system were secret. Specifically, first, the panel held that InteliClear, through a declaration, had demonstrated that its alleged trade secrets were not simply uncommon in other systems, but in combination, unique in the industry. Second, the panel held that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

InteliClear contended correctly that it took reasonable measures to encrypt and compile its source code and require licensees to agree to confidentiality. The panel concluded that a reasonable jury could find that portions of the InteliClear system were not generally known or reasonably ascertainable to others.

The panel held that the district court abused its discretion under Fed. R. Civ. P. 56(d) by issuing its summary judgment ruling before discovery occurred. The panel concluded that the summary judgment granted was precipitous, premature and did not fairly permit development of the issues for resolution because the nonmoving party did not have a discovery opportunity.

---

## COUNSEL

Richard S. Order (argued) and Adam B. Marks, Updike Kelly & Spellacy P.C., Hartford, Connecticut; Kenneth A. O'Brien Jr. and Laura A. Alexander, Sheppard Mullin Richter & Hamilton LLP, Los Angeles, California; for Plaintiff-Appellant.

J. Kevin Fee (argued) and Michael E. Kenneally, Morgan Lewis Bockius LLP, Washington, D.C.; Brian M. Hom, Morgan Lewis Bockius LLP, Los Angeles, California; Kathryn A. Feiereisel, Morgan Lewis Bockius LLP, Chicago, Illinois; for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

This appeal involves the requisite particularity with which trade secret misappropriation plaintiffs must define their trade secrets to defeat a motion for summary judgment. Deciding trade secret claims means navigating the line between the protection of unique innovative technologies and vigorous competition. Plaintiff InteliClear seeks to protect its interest in the logic and architecture of its securities tracking database, while Defendant ETC maintains that its newer system is an independent improvement to the securities tracking marketplace. Before we reach the question of whether the defendant misappropriated the plaintiff's intellectual property, we must identify InteliClear's alleged trade secrets and decide if they are protectable.

We hold that: (1) there is a triable issue of fact as to whether (a) InteliClear described its alleged trade secrets with sufficient particularity and (b) InteliClear has shown that parts of the InteliClear System are secret; and (2) the district court abused its discretion under 56(d) by issuing its summary judgment ruling before discovery occurred. Accordingly, we reverse the district court's grant of summary judgment in favor of Defendant ETC.

**I**

Between 2004 and 2006, InteliClear developed the "InteliClear System," a comprehensive electronic system for managing stock brokerage firm accounting, securities clearance, and securities settlement services. Martin Barretto (Barretto), InteliClear's General Manager, developed the InteliClear System to address a void in back

office offerings.    InteliClear used a Structured Query Language (SQL) relational database designed to handle millions of trades each business day.

On January 9, 2008, ETC's predecessor and later subsidiary obtained a license of the InteliClear System from InteliClear and signed a Software License Agreement.  The agreement acknowledged that all information InteliClear provided was confidential, proprietary, and copyrighted, and through the agreement, ETC agreed to maintain that information in confidence "during and after" the terms of the agreement.  The rights, duties, and obligations under the License Agreement were assigned and delegated to Defendant ETC in 2012.

On November 20, 2017, ETC sent InteliClear a notice of termination of the Software License Agreement, effective February 28, 2018.    ETC committed to "remove the InteliClear database from its systems" by February 26, 2018.  On March 5, 2018, ETC certified that the InteliClear System had been removed from all ETC servers and that all copies of the InteliClear System had been destroyed.  But before terminating the Software License Agreement, ETC had begun building its own securities clearing software.  Shortly thereafter, ETC deployed its own new electronic trading system.    In February 2018, Barretto—the InteliClear System's architect—noticed similarities between ETC's new system and the system he had built for InteliClear, including a table used in the ETC system with the same "unique names" in a column as used in the InteliClear System.

InteliClear contacted ETC in April 2018 about its suspicion that ETC had improperly used the InteliClear System to build its own system.  After months of negotiation, ETC agreed to allow Capsicum Group, LLC, a computer

technology and forensics expert hired by InteliClear, to compare the two systems and investigate. Consultants from Capsicum investigated the two systems in September and October 2018. Capsicum then issued a Summary Report, finding "abundant evidence" that elements of the ETC system were identical to elements of the InteliClear System. Samuel Goldstein, Capsicum's founder and CEO, stated in his declaration: "In fact, so striking were the similarities that it appeared to us that ETC's system had been constructed by a programmer who had one eye on the InteliClear System as it was running and the other eye on the system he was building, like a painter looking back and forth at a live model while depicting her on the canvas."

After receiving the Capsicum report, in December 2018, InteliClear filed the underlying suit against ETC in federal court. InteliClear alleged that ETC misused InteliClear's securities trading tracking system. InteliClear brought claims against ETC for: (1) misappropriation under the federal Defend Trade Secrets Act ("DTSA"); (2) misappropriation under the California Uniform Trade Secrets Act ("CUTSA"); and (3) unfair competition.

The district court dismissed InteliClear's unfair competition claim, reasoning that it was preempted by the CUTSA, but denied ETC's motion to dismiss as to InteliClear's trade secret misappropriation claims. The day after discovery began, on May 21, 2019, ETC moved for summary judgment on InteliClear's remaining claims. ETC contended that InteliClear did not identify its trade secrets with sufficient particularity, and that InteliClear did not show that the InteliClear System was a trade secret or that ETC had access to InteliClear's source code. In response to ETC's motion, InteliClear submitted a sealed declaration

from Barretto describing the system's features in more detail. To date, no discovery has occurred.

The district court granted ETC's motion for summary judgment and held that InteliClear failed to sufficiently identify which elements of the InteliClear System were allegedly trade secrets. The district court also denied InteliClear's motion to defer ruling until after completion of discovery under Rule 56(d) because the court determined that discovery would not resolve the underlying deficiencies—*i.e.*, the failure to state the alleged trade secrets with sufficient particularity. Because the district court dismissed InteliClear's claims on that basis, it did not reach the issue of whether a genuine dispute existed with respect to misappropriation or damages. We address the district court's decisions on summary judgment and Rule 56(d) discovery below.

## II

We review a district court's grant of a motion for summary judgment *de novo*. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). We determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. Fed. R. Civ. P. 56. A genuine dispute of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

**III**

InteliClear brings claims for trade secret misappropriation under both the federal DTSA and the California CUTSA. Courts have analyzed these claims together because the elements are substantially similar. *See, e.g.*, *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 970–71 (C.D. Cal. 2017). We conclude that it is appropriate to do so here.

We start from the important premise that the definition of what may be considered a "trade secret" is broad. *See Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1057 (9th Cir. 1982). Under the DTSA, a "trade secret" is defined as: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." The information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information." 18 U.S.C. § 1839(3). Therefore, the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret. *See* 18 U.S.C. §§ 1839(3), (5).

To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the

misappropriation caused or threatened damage to the plaintiff. *See* 18 U.S.C. § 1839(5).  The district court did not reach elements two and three—misappropriation and damage—because it found that InteliClear failed to show it possessed a trade secret by not identifying its secrets with sufficient particularity.

## A

To prove ownership of a trade secret, plaintiffs "must identify the trade secrets and carry the burden of showing they exist."  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).  "The plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'"  *Imax Corp. v. Cinema Techs*., Inc., 152 F.3d 1161, 1164 (9th Cir. 1998).[1]  Plaintiffs must "clearly refer to tangible trade secret material" instead of referring to a "system which *potentially* qualifies for trade secret protection."  *Id.* at 1167 (emphasis in original). Plaintiffs may not simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial.  *See Imax*, 152 F.3d at 1167; *X6D Ltd. v. Li-Tek Corps. Co.*, No. 10-cv-2327-GHK-PJWx, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012).  It is inadequate for plaintiffs to "cite and incorporate by reference hundreds of

---

[1] Pursuant to California Code of Civil Procedure Section 2019.210, plaintiffs must identify their trade secrets with "reasonable particularity" prior to commencing discovery.  Cal. Civ. Code § 2019.210.  Federal courts have applied the state provision in federal cases.  *See SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *1–3 (N.D. Cal. June 14, 2012).  We hold that there is a triable issue of fact as to whether InteliClear sufficiently identified its trade secrets under both the federal statutory standard and the state statutory standard.

documents that purportedly reference or reflect the trade secret information." *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *6 (internal quotations omitted); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001) ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets.").

Identifying trade secrets with sufficient particularity is important because defendants need "concrete identification" to prepare a rebuttal. *Imax*, 152 F.3d at 1167. Courts and juries also require precision because, especially where a trade secrets claim "involves a sophisticated and highly complex" system, the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract. *Id.*

At the highest level of generality, InteliClear described its trade secrets as "the InteliClear System's unique design and concepts and the unique software, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which its components interrelate and process data." In response to ETC's motion for summary judgment, InteliClear produced, among other things, two declarations: the Barretto Declaration and the Goldstein Declaration. Barretto Decl. ¶ 1–45, Goldstein Decl. ¶ 1–33. In his declaration, General Manager and InteliClear System architect Barretto expanded upon the initial definition and described specific features of the InteliClear System as trade secrets.[2] Barretto outlined the specific tables, table columns, account identifiers, codes, and methodologies InteliClear

---

[2] Because the portions of the Barretto Declaration that describe the elements of the InteliClear System that are trade secrets were filed under seal, we refer to those sections in general terms. Barretto Decl. ¶ 12–20.

claimed as trade secrets.  Barretto Decl. ¶ 12–20.  ETC responded to the Barretto Declaration by submitting a supplemental declaration from its Chief Technology Officer, Barnaby Hatchman, arguing that there were four areas where InteliClear's explanation of its trade secrets was "unclear." ETC maintained that identifiers like the above still fail to separate trade secrets from information known in the industry.  *Id.*  For example, ETC argued it was unclear what "methodology" means—though Barretto refers to certain underlying triggers and queries—and whether it describes source code, a table structure, or something else.  *Id.*

We hold that there is a genuine issue of material fact as to whether InteliClear identified its trade secrets with sufficiently particularity.  A reasonable jury could conclude that the uniquely designed tables, columns, account number structures, methods of populating table data, and combination or interrelation thereof, are protectable trade secrets.  Unlike the plaintiffs in *Imax*, InteliClear here identified aspects of its database logic and architecture with enough specificity to create a triable issue of fact.  Rather than using "catchall" phrases or merely identifying categories of information, the Barretto Declaration—filed under seal to protect InteliClear's proprietary information— specified the program processes, tables, columns, and account identifiers from its SQL database that it considered trade secrets.  *See Imax,* 152 F.3d at 1167.

The district court appeared to come to this same conclusion that trade secrets were involved, when it acknowledged that the Barretto Declaration identified "some" of InteliClear's trade secrets.  Specifically, the court stated:

> Plaintiff describes its trade secrets through a
> declaration by its General Manager, Barretto.

> To be sure, Barretto identifies "some of the
> features" of the System that it considers trade
> secrets, such as its uniquely-designed tables,
> columns, account number structures, and
> methods of populating table data. (Barretto
> Decl. ¶¶ 12–20).  But Barretto's description
> raises a problem: *By only identifying "some"
> of its trade secrets*, Plaintiff leaves open the
> possibility that it might later argue that other
> unnamed elements of the InteliClear System
> are trade secrets as well.

(emphasis added) (footnote omitted).   At this stage,
particularly where no discovery whatsoever had occurred, it
is not fatal to InteliClear's claim that its hedging language
left open the possibility of expanding its identifications later.
InteliClear's burden is only to identify at least one trade
secret with sufficient particularity to create a triable issue.
*See Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, No. 13-
CV-2856 JLS, 2016 WL 5719819, at \*11 (S.D. Cal. Sept.
30, 2016) (noting that "it's not the volume, it's the
particularity that matters").

Our holding is consistent with the standard for
"sufficient particularity" set by other federal circuits.  In *IDX
Systems Corp. v. Epic Systems Corp.*,[3] the Seventh Circuit
held that a description of the methods and processes
underlying the features of a software package were "both too
vague and too inclusive" to defeat a summary judgment
motion because they "effectively assert[ed] that all

---

[3] The California Court of Appeal held that "[t]he reasoning of *IDX*
is not inconsistent" with California trade secret law, which is
substantially similar to trade secret law under the DTSA.  *See Bresica v.
Angelin*, 172 Cal. App. 4th 133, 150 n.1 (Cal. Ct. App. 2009).

information in or about its software is a trade secret." 285 F.3d 581, 583–84 (7th Cir. 2002). The court cautioned that a plaintiff "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *Id.* Even though the *IDX* plaintiff's descriptions spanned 43 pages, those pages described the software without separating the trade secrets from other information that goes into any software package because the plaintiff merely tendered the "complete documentation for the software." *Id.*

By contrast, rather than tendering the entire database to the court and asking the district judge to parse through it to determine what seemed valuable and generally unknown, InteliClear made that determination itself. *See TelSwitch, Inc. v. Billing Sols. Inc.*, No. C 12-00172 EMC LB, 2012 WL 3877645, at *3 (N.D. Cal. Sept. 6, 2012) (holding that the plaintiff's "unique configuration of tables, fields, and joins that is the structure of [its] SQL database" description was sufficiently particular under the CUTSA). We hold that there is at least a genuine dispute as to whether InteliClear was successful in identifying at least one trade secret with sufficient particularity. *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir. 2014) ("Where conflicting inferences may be drawn from the facts, the case must go to the jury.") (citation and internal quotation marks omitted). At this stage of the proceedings, we hold that a jury properly instructed can make the determination of what trade secrets exist, before addressing other elements of the claim.

## B

Under the DTSA, a required element of a trade secret is that the owner "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); Cal. Civ. Code

§ 3426.1(d) (defining trade secrets under CUTSA similarly). Items in a trade secret description that "any user or passer-by sees at a glance" are "readily ascertainable by proper means" and therefore "hard to call trade secrets." *IDX*, 285 F.3d at 584 (holding that "the appearance of data entry screens" are not trade secrets).

The district court found no triable issue as to whether features of the InteliClear System were truly "secret" because they were either: (1) "uncommon" in other systems but not "generally unknown," or (2) visible to end-users of the InteliClear System who are not under confidentiality obligations. We address each argument in turn and conclude that neither is persuasive.

First, InteliClear, through the Barretto Declaration, demonstrated that its alleged trade secrets were not simply uncommon in other systems, but in combination, unique in the industry. Though Barretto noted that use of one component of the database was "not common in other systems," this description was in the context of explaining how several components had been uniquely combined to produce an effect "not found elsewhere on Wall Street." Barretto Decl. ¶ 16. Databases designed to track similar information will inevitably have overlap in how they categorize data. InteliClear went further and made it sufficiently clear that the combination and interrelation of its database components was unique.

Second, InteliClear contends, we think correctly, that it took reasonable measures to encrypt and compile its source code and require licensees to agree to confidentiality. Confidentiality provisions constitute reasonable steps to maintain secrecy. *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993). It is also "well established that 'confidential disclosures to employees,

licensees, or others will not destroy the information's status as a trade secret.'" *United States v. Nosal*, 844 F.3d 1024, 1043–44 (9th Cir. 2016) (quoting Restatement (Third) of Unfair Competition § 39 cmt. f (1995)); *see also United States v. Chung*, 659 F.3d 815, 825–26 (9th Cir. 2011) (noting that "oral and written understandings of confidentiality" can qualify as "reasonable measures" to keep information confidential).

Here, ETC's subsidiary entered into a confidentiality agreement with InteliClear in 2008, the Software License Agreement, which was assigned to ETC in 2012. In that agreement, ETC expressly agreed to keep the information InteliClear provided by license confidential "during and after" the terms of the agreement. In responding to InteliClear's complaint, ETC submitted evidence that an InteliClear System client, Industrial and Commercial Bank of China ("ICBC"), used ETC for clearing services and provided ETC with a trade specification and interface to ensure that all trade files were compatible with the InteliClear System. As an ICBC clearing client, ETC had "end-user access to the ICBC InteliClear client interface" but ETC asserts that it was never asked to treat the material as confidential. ETC produced screenshots where aspects of the InteliClear System's infrastructure were visible to end-users. InteliClear contends that the confidentiality provision that bound ETC as a licensee also bound ICBC and any other third party to which ICBC needed to show components of the InteliClear System. Barretto Decl. ¶ 22. When ETC became an ICBC clearing client in 2014, it had already been a licensee of the InteliClear System for more than six years pursuant to the Software License Agreement. At that time, ETC would have been bound by the existing confidentiality provision and has not provided other examples of end-

users—who are *not* subject to a confidentiality agreement—that had access to InteliClear's trade secrets.

We hold that, viewing the facts in the light most favorable to InteliClear, a reasonable jury could find that portions of the InteliClear System are not "generally known" or "readily ascertainable" to others. 18 U.S.C. § 1839(3). Though ETC provided some evidence that end-users of the InteliClear System can see some of the logic and source code underpinning the database, InteliClear introduced sufficient rebuttal evidence to create a genuine dispute of material fact. InteliClear's efforts to protect its trade secrets through licensing agreements constitute reasonable measures that are adequate to preclude judgment as a matter of law. *See MAI*, 991 F.2d at 521.

# IV

We review denial of a Rule 56(d) request to defer a summary judgment ruling to complete discovery for abuse of discretion. *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).[4]

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to

---

[4] InteliClear argues in the alternative that the district court should have asked it to clarify its identifications pursuant to Fed. R. Civ. P. 56(e)(1). ETC argues that InteliClear waived its Rule 56(e) argument because it did not move for reconsideration of the district court's summary judgment order, instead raising the issue for the first time on appeal. We need not decide InteliClear's Rule 56(e) claim, however, because we conclude that the district court abused its discretion in denying Rule 56(d) discovery.

obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To prevail on a request for additional discovery under Rule 56(d), a party must show that: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017) (citation omitted).

When ETC filed its motion for summary judgment, the discovery period had lasted for only one day and no discovery had yet been requested or provided. The district court recognized that discovery had "just begun," but held that "[n]o amount of discovery propounded on [ETC] will uncover which elements of [InteliClear's] own InteliClear System it believes are trade secrets and which are generally known" (citing *Sit-Up Ltd. v. AIC/InterActivCorp.*, No. 05-09292, 2008 WL 463884, at *7 (S.D.N.Y. Feb. 20, 2008)).

Federal cases analyzing whether a plaintiff's trade secrets are described with "sufficient particularity" typically arise in the battleground of discovery. In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification. *See, e.g.*, *TelSwitch, Inc. v. Billing Sols. Inc.*, 2012 WL 3877645, at *4 (holding that Plaintiffs' trade secret description was adequate where Plaintiff, at a hearing, "agreed that it was limiting the scope of its claims to the precise database disclosed [during discovery]"); *see also E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 17-cv-00808-DAD-EPG, 2018 WL 2463869, at *6 (E.D. Cal. June 1, 2018) ("[T]he issue of whether all of the

plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is the proper subject of discovery.").

Pursuant to Rule 56(d), InteliClear submitted declarations showing that it would receive information necessary to refine its identifications through discovery. Even ETC's briefing suggests that a delay in ruling so that the parties could produce documents would have resolved the issue. *See* Appellees' Br. 19 (explaining that "InteliClear could easily have disclosed, for instance, an export file reflecting its table design, or its source code"). In ETC's reply to the Barretto Declaration, it noted that Barretto gave examples of the "unique columns" he created, but ETC contended that it was "unclear whether InteliClear claims rights to all columns in the tables at issue, only the columns identified by Barretto, or something else." Even a small amount of discovery would have let InteliClear clarify such discrete points, which would have driven a potentially meritorious case forward. *See TelSwitch, Inc. v. Billing Sols. Inc.*, 2012 WL 3877645, at *4.

Refining trade secret identifications through discovery makes good sense. The process acknowledges the inherent tension between a party's desire to protect legitimate intellectual property claims and the need for intellectual property law to prevent unnecessary obstacles to useful competition. Other courts have recognized that plaintiffs in trade secret actions may have commercially valid reasons to avoid being overly specific at the outset in defining their intellectual property. *See IDX*, 285 F.3d at 583 ("Reluctance to be specific is understandable; the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie and where the rival's own development efforts should be focused.").

The cases upon which ETC relies are distinguishable. In *Sit-Up*—cited by the district court in dismissing InteliClear's claims—the trial court noted that there had been "massive document discovery" prior to the summary judgment motion at issue. 2008 WL 463884, at *5 (stating that the "parties continued to meet and confer to address discovery disputes, keeping the Court apprised both of the parties' progress in discovery and their need for additional time to complete summary judgment motions"). The court "repeatedly" reminded Plaintiffs of their burden to specifically identify trade secrets and ordered Plaintiffs to produce that information. *Id.* at *8 ("[P]laintiff's inability to identify its trade secrets with specificity has been an issue in this action for more than half of its pendency."). It was only after Plaintiffs made supplemental disclosures, more than one conference was held, and both parties asked for and received additional time extensions that the court held that Plaintiff failed to satisfy its burden. *Id.*

Similarly, in *Imax Corp. v. Cinema Technologies, Inc.*, we held that the defendant was entitled to summary judgment because Imax did not satisfy its burden of identifying which "dimensions and tolerances" it claimed as trade secrets. 152 F.3d at 1164. But by that point in the case, the parties had gone through a protracted discovery period where Imax repeatedly had failed to achieve the level of specificity that the court had requested. During discovery in that case, Defendant CTI served interrogatories asking Imax to "identify the *entire content* of each and every trade secret" allegedly misappropriated. *Id.* at 1165 (emphasis in original). The magistrate judge granted CTI's motion to compel complete responses to these requests and denied Imax's motion for reconsideration and overruled its objections after Imax claimed the requests for specificity were vague and overly broad. *Id.* Ultimately, after receiving

Imax's Fourth Supplemental Responses to the initial interrogatories, we concluded that "[u]nder these facts, reasonable specificity could only be achieved by identifying the precise numerical dimensions and tolerances as trade secrets." *Id.* at 1166–67.

*Imax* emphasized that the plaintiff, having gone through the dialectic discovery process, should not have been confused "as to the level of specificity required" and, by failing to request further clarification of the discovery orders, "*knowingly incurred the risk* that its Fourth Supplemental Reponses would not meet the 'reasonable particularity' requirement." *Id.* at 1167–68 (emphasis added). InteliClear, on the other hand, endeavored to be specific at the outset in identifying aspects of the InteliClear System that were protectable because they had value and were generally unknown. At this stage of the litigation, InteliClear did not have cause to guess that the Barretto Declaration would be insufficient to identify its trade secrets with particularity. *See Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, No. 13-CV-2856 JLS, 2016 WL 5719819, at *10–12 (S.D. Cal. Sept. 30, 2016) (holding that the plaintiffs' "subjective and vague descriptions" were insufficient "at this late stage in the litigation" and that additional attempts to refine its identification would be "too little too late" after a year and a half of discovery).

Unlike in *Imax* where there had been a discovery process, ETC here moved for summary judgment on the trade secret claims on May 21, 2019, the day after the initiation of discovery. To date, no discovery has been conducted and oral argument in the district court was cancelled. On these facts, we conclude that the summary judgment granted was precipitous, premature and did not fairly permit development of the issues for resolution,

because the "nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citation omitted).  We hold that the district court abused its discretion in declining to defer a summary judgment ruling until discovery had proceeded.

## V

Construing the relevant evidence in the light most favorable to InteliClear, we hold that genuine disputes of material fact remain as to whether InteliClear demonstrated that it possessed protectable trade secrets and that the district court abused its discretion in denying discovery under Rule 56(d).[5]

**REVERSED.**

---

[5] Our decision is without prejudice to the possibility that ETC may wish to renew its summary judgment motion after the conclusion of discovery.