FOR PUBLICATION

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., | No. 23-16093 |
| *Plaintiff-Appellant*, | D.C. No. 3:20-cv-04808-WHA |
| v. | |
| RUIFENG BIZTECH, INC.; GANGYOU WANG; ALAN LI; RF BIOTECH LLC, | OPINION |
| *Defendants-Appellees*, | |
| and | |
| ALEX WONG; RUI SHAO, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted February 12, 2025
San Francisco, California

Filed August 12, 2025

Before:  Lawrence VanDyke and Anthony D. Johnstone, Circuit Judges, and Dana L. Christensen,[*] District Judge.

Opinion by Judge Johnstone

**SUMMARY**[**]

**Defend Trade Secrets Act/Discovery**

Affirming in part and reversing in part the district court's judgment in favor of defendants in an action brought under the Defend Trade Secrets Act ("DTSA") by Quintara Biosciences, Inc., and remanding, the panel held that the district court abused its discretion in striking some of Quintara's trade secrets at the discovery stage.

The DTSA requires a plaintiff to prove, as a matter of fact, that its claimed trade secret has "sufficient particularity" to separate it from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.  The district court ordered Quintara to disclose with "reasonable particularity" each of its allegedly misappropriated trade secrets at the outset of discovery, a rule borrowed from the California Uniform Trade Secret Act ("CUTSA").  Unlike CUTSA, however, the DTSA does not require a plaintiff to identify with particularity its alleged trade secrets from the start.  The district court concluded that

---

[*] The Honorable Dana L. Christensen, United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

only two of Quintara's trade secrets satisfied its "reasonable particularity" order, and it granted defendant Ruifeng Biztech, Inc.'s motion to strike the other trade secrets pursuant to Federal Rule of Civil Procedure 12(f), effectively dismissing Quintara's misappropriation claim for those trade secrets.

The panel held that the district court abused its discretion by striking Quintara's trade secrets. The district court had broad pretrial management powers under Federal Rule of Civil Procedure 16 to address the "delicate problem" of discovery in a trade-secret case, as well as more specific authority to order that trade secrets "be revealed only in a specified way" under Rule 26(c)(1)(G). The panel held that Quintara's trade secrets were not strikable under Rule 12(f), which authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The district court also did not properly strike the trade secrets as a discovery sanction under Rule 37(b)(2)(A)(iii) for failure to comply with the "sufficient particularity" order. The panel held that a DTSA trade-secret claim will rarely be dismissible as a discovery sanction in a situation like the one here because the fact question of "reasonable particularity" should be resolved on summary judgment or at trial.

## COUNSEL

J. James Li (argued), LiLaw Inc., San Jose, California, for Plaintiff-Appellant.

Niceforo L. Avila Jr. (argued), Niceforo Avila Law, Oakland, California, for Defendants-Appellees.

**OPINION**

JOHNSTONE, Circuit Judge:

The Defend Trade Secrets Act ("DTSA") provides a federal cause of action for misappropriation of trade secrets. This appeal asks at what point in the case, and with how much particularity, a DTSA plaintiff must specify its purported trade secrets. By definition, trade secrets derive their value from nondisclosure. Both plaintiffs and defendants want to protect their trade-secret information from the opposing party—often a competitor. So trade-secret cases present what we have called a "delicate problem." *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 328 (9th Cir. 1961). How can plaintiffs plead, discover, and prove whether a trade secret has been misappropriated without giving away the trade secret? On the other hand, how can defendants respond to discovery without giving away their own trade secrets? Requiring too much disclosure too early could encourage fishing expeditions. Requiring too little disclosure too late could prevent the parties from proving or defending their claims. All civil discovery presents these concerns, but they are especially acute in trade-secret cases.

The district court attempted to solve this problem by ordering plaintiff Quintara Biosciences to disclose with "reasonable particularity" each of its allegedly misappropriated trade secrets at the outset of discovery, a rule borrowed from the California Uniform Trade Secret Act ("CUTSA"). Dissatisfied with the particularity of Quintara's trade-secret disclosures, and at the district court's invitation, defendant Ruifeng Biztech moved to strike Quintara's trade secrets under Federal Rule of Civil Procedure 12(f). The district court concluded that only two of Quintara's trade-

secrets satisfied its "reasonable particularity" order. Citing its "wide discretion in controlling discovery" and Federal Rule of Civil Procedure 16, the court struck the other trade secrets, effectively dismissing Quintara's misappropriation claim for those trade secrets.

By its terms and unlike CUTSA, the federal DTSA does not require a plaintiff to identify with particularity its alleged trade secrets from the start. CUTSA's "reasonable particularity" disclosure rule is similar to the "sufficient particularity" showing we require to establish ownership of a trade secret under DTSA. But whether a DTSA plaintiff has identified information that is sufficiently particular to constitute a trade secret—information that is kept secret and derives value from not being generally known—is a question of fact. So whether a plaintiff has sufficiently particularized a trade secret under DTSA is usually a matter for summary judgment or trial. While a district court has broad discretion to manage pleadings and discovery, and to impose sanctions on a noncompliant party, the district court exceeded that authority here. Even if Quintara's disclosures did not satisfy the district court's "reasonable particularity" order as to some trade secrets, without more, this is not an extreme circumstance that warrants dismissal of Quintara's claim as to those trade-secrets under Rules 26 and 16. Nor did Rule 12(f) provide a basis to strike any of Quintara's trade secrets. Because the order striking Quintara's trade secrets was an abuse of discretion, we reverse.

## I.  Quintara sues under the federal DTSA.

Quintara Biosciences, Inc., and Ruifeng Biztech, Inc., are DNA-sequencing-analysis companies based in California. While the parties contest the exact nature of their relationship, they agree that they engaged in a business

arrangement from 2013 to 2019. The relationship soured in 2019, when Quintara alleges that Ruifeng locked Quintara out of its office, took possession of Quintara's equipment, and hired Quintara employees. Quintara sued Ruifeng in response.

Quintara's First Amended Complaint ("Complaint") included one count under DTSA for misappropriation of trade secrets, but no CUTSA claims. Under DTSA, Quintara alleged that Ruifeng misappropriated nine trade secrets: Quintara's (1) "customer database;" (2) "customer profile database;" (3) "marketing plan;" (4) design of potential new products; (5) vendor database; (6) computer software code; (7) "[c]ustomized reagents and protocols;" (8) design of new products; and (9) "DNA Donor technology."

At the Rule 26(f) discovery-planning conference, the parties debated whether Quintara must specify its trade secrets with "reasonable particularity" under CUTSA section 2019.210. Cal. Civ. Proc. Code § 2019.210. That rule requires that "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." *Id.* After a back-and-forth with Ruifeng, Quintara disclosed its trade secrets with nearly the same specificity as it did in the Complaint. The parties then filed a joint case-management plan, which did not raise any issues pertaining to disclosure or the need for protective orders concerning Quintara's trade-secret claim.

Ruifeng soon moved for a protective order to halt discovery until Quintara further specified its trade secrets under section 2019.210 and Rule 26. Ruifeng argued that Quintara failed to specify its trade secrets "with sufficient particularity so they can be distinguishable from the prior art

and information not already generally known by those skilled in the industry," which "hamper[s] the Court's ability to . . . determine the applicable scope of discovery." The district court, citing section 2019.210, ordered Quintara to provide (1) a summary of each specific trade secret; (2) how it has derived independent economic value by not being generally known; (3) how Quintara has maintained its secrecy; and (4) "each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent." Quintara responded by filing an amended trade-secret disclosure ("Disclosure") under seal. In the Disclosure, it expanded the description of each trade secret from a few sentences to one or more paragraphs, including new technical details. It also subdivided two of the trade secrets claimed in the Complaint into four separate trade secrets.

Ruifeng still found the Disclosure lacking. Again, it moved to halt discovery. To end the discovery standoff, the district court gave Ruifeng a choice: "accept the disclosure and comply with discovery; or move to strike the disclosure, withhold discovery, and accept the consequences if wrong." Choosing the latter, Ruifeng moved to strike Quintara's trade secrets in the Disclosure, citing Rule 12(f).

The district court granted Ruifeng's motion to strike. Drawing on CUTSA section 2019.210, it reviewed the alleged trade secrets in Quintara's Disclosure. The court acknowledged that the "state procedure does not govern here," yet it applied that "reasonable particularity" rule "to nail down [Quintara's] asserted trade secrets . . . [and] permit [the court] to discern the reasonable bounds of discovery." It held that Quintara failed, in part, to meet section 2019.210's requirements, and it struck nine of the eleven trade secrets from the Disclosure. It further

determined that Quintara had sufficiently described two remaining trade secrets: the customer profile database and vendor database. And it ordered "[t]he parties [to] proceed to summary judgment on the surviving asserted trade secrets." The parties then conducted discovery on the DTSA customer-profile-database and vendor-database trade secrets. After Quintara chose to forego the vendor-database trade secret claim, a jury returned a verdict for Ruifeng on the single trade secret still at issue.

We review de novo the district court's order to strike under Rule 12(f). *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). We review for abuse of discretion a district court's dismissal for violating a pretrial order. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

## II. The district court abused its discretion by striking Quintara's trade secrets and thereby effectively dismissing Quintara's claim as to those trade secrets.

Under DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action." 18 U.S.C. § 1836(b)(1). To succeed on a DTSA claim, "a plaintiff must prove: (1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); *see also* 18 U.S.C. §§ 1836(b)(1), 1839(3)–(5). Trade-secret cases "start from the important premise that the definition of what may be considered a 'trade secret' is broad." *InteliClear*, 978 F.3d at 657 (citing *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1057 (9th Cir. 1982)). DTSA's

definition of a trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to . . . another person." 18 U.S.C. § 1839(3). So to successfully prove possession of a trade secret—the first element of any DTSA claim—plaintiffs must prove that they possess information that (A) they have tried to keep secret and (B) "is valuable because it is unknown to others." *InteliClear*, 978 F.3d at 657–58; *see* 18 U.S.C. § 1839(3).

Despite the breadth of potential trade-secret protection, not all proprietary information qualifies for protection as a property interest under DTSA. To show that information is a trade secret, a plaintiff "may not simply rely upon 'catchall' phrases or identify categories of trade secrets." *InteliClear*, 978 F.3d at 658. Instead, a plaintiff must prove that the claimed trade secret has "*sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Id.* (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)) (emphasis in original).

Whether a trade secret is identified with "sufficient particularity" is a question of fact. In *InteliClear, LLC v. ETC Global Holdings, Inc.*, we reversed a grant of summary judgment where there was a genuine issue of material fact as to whether the plaintiff "identified its trade secrets with sufficient[] particularity." *Id.* at 659. Defendants in *InteliClear* argued that even after plaintiffs "expanded upon the initial definition" of the claimed trade secrets, and "described [their] specific features," the plaintiffs "still fail[ed] to separate trade secrets from information known in

the industry." *Id.* at 658–59. But we explained that at an early stage of litigation, "particularly where no discovery whatsoever had occurred, it is not fatal to [the plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later." *Id.* at 659. We therefore held that the district court erred in granting summary judgment, *id.* at 664, and abused its discretion in denying a Rule 56(d) request to allow the plaintiff "to refine its identifications through discovery," *id.* at 662. So the identification of a trade secret is a question of fact, and a district court may grant summary judgment only if there is no genuine dispute that a plaintiff could identify a trade secret with "sufficient particularity." *Id.* at 657–59, 663–64; Fed. R. Civ. P. 56; *see also Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1088–89 (10th Cir. 2025).

Because trade secrets derive their value from nondisclosure, discovery involving trade secrets presents a "delicate problem." *Hartley Pen Co.*, 287 F.2d at 328. That is, how can a court "secure the right of one litigant to get relevant and necessary evidence and to protect the other litigant from disclosing secrets which are not relevant and necessary[?]" *Id.* When discovery begins, "plaintiffs in trade secret actions may have commercially valid reasons to avoid being overly specific at the outset in defining their intellectual property." *InteliClear*, 978 F.3d at 662. This is because "the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie." *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002). As we recognized in *Hartley Pen*, defendants share similar concerns about turning over trade secrets or other proprietary information in response to plaintiffs' discovery requests. 287 F.2d at 327–28. So for both sides, the conventional order of pleadings, initial disclosures, and

first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim. Discovery in a trade-secret case, then, requires an "iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 662. The Federal Rules of Civil Procedure equip a district court to manage this "delicate problem" with broad Rule 16 pretrial management powers, and more specific authority to order that trade secrets "be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Plaintiffs often bring parallel state and federal trade-secret-misappropriation claims. *See* 18 U.S.C. § 1838 (providing that DTSA "shall not be construed to preempt or displace" state remedies). State law in California, where this case arises, takes a different approach under CUTSA's rule that a plaintiff "shall identify a trade secret with 'reasonable particularity'" before discovery commences. Cal. Civ. Proc. Code § 2019.210. We have noted that a plaintiff who has satisfied DTSA's "sufficient particularity" standard may also satisfy CUTSA's "reasonable particularity" rule. *InteliClear*, 978 F.3d at 658 n.1. This makes sense because, like CUTSA's "reasonable particularity" rule, DTSA's "sufficient particularity" standard can channel discovery and trial preparation toward the alleged trade secret at issue, and away from other proprietary information that is not relevant to the claim. *See id.* at 658. Indeed, some federal district courts have applied CUTSA's "reasonable particularity" rule to CUTSA claims, at times in combination with DTSA claims. *See, e.g.*, *Chung v. Intellectsoft Grp. Corp.*, No. 21-CV-03074-JST, 2024 WL 813445, at *8 (N.D. Cal. Feb. 12, 2024); *Pinkerton Tobacco v. Kretek Int'l*, No. CV 20-8729

SB (MRWX), 2021 WL 4928024, at \*1–2 (C.D. Cal. July 14, 2021).[1]

Still, DTSA requires a plaintiff to identify a trade secret with "sufficient particularity" as a matter of fact, unlike CUTSA's "reasonable particularity" rule. *InteliClear*, 978 F.3d at 659. And unlike CUTSA, DTSA does not set out requirements for the specific timing or scope for identifying trade secrets. Instead, the conventional procedures under the Federal Rules of Civil Procedure apply. Here, Ruifeng cited Rule 12(f) and the district court cited Rule 16 in managing the "delicate problem" of trade-secret discovery. But in moving to strike and striking Quintara's trade secrets, Ruifeng and the court ultimately relied on a California rule that does not control a federal trade-secret claim. And based on the facts and procedural posture of this case, neither Rule 12(f) nor Rule 16 authorized the district court to strike—and functionally dismiss—Quintara's claim to nine of its trade secrets.

### A. Quintara's trade secrets were not strikable under Rule 12(f).

Ruifeng filed a Rule 12(f) motion to strike Quintara's trade-secret Disclosure. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The district court granted Ruifeng's motion to strike Quintara's trade-secret Disclosure on all but two of the trade secrets.

---

[1] Because this case presents only a DTSA claim, we do not address whether CUTSA's disclosure rule is binding on federal courts considering CUTSA claims. *See Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 584 (9th Cir. 2022).

Even if Quintara's Disclosure could be construed as a pleading, neither Ruifeng nor the district court identified any strikable matter under Rule 12(f). Quintara's trade secrets are not an "insufficient defense," and the parties have not argued otherwise. Nor are the trade secrets "redundant" as they "do[] not appear anywhere else in the complaint." *See Whittlestone,* 618 F.3d at 974. The trade secrets are not "immaterial" as each directly relates to Quintara's requested relief. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ("'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1382, at 706–07 (1990))). And the trade secrets are not "impertinent" because whether Quintara can recover and protect these trade secrets is directly related to the harm being alleged. *See id.* ("'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question. Superfluous historical allegations are a proper subject of a motion to strike." (quoting Wright & Miller, *supra*, § 1382, at 711)). Finally, the trade secrets are not "scandalous." *See Whittlestone*, 618 F.3d at 974. So any authority to strike the trade secrets at issue cannot lie in Rule 12(f).

## B. The discovery sanction dismissing Quintara's claim to the nine trade secrets was an abuse of discretion.

We now turn to whether the district court properly struck Quintara's trade secrets as a discovery sanction. When it held that Quintara failed to disclose nine of its trade secrets with "reasonable particularity," the district court ordered the parties to proceed on the claim only as to the two remaining trade secrets. In doing so, the district court effectively

dismissed Quintara's claim to the other nine. That was an abuse of discretion.

Rule 26 vests district courts "with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see, e.g.*, Fed. R. Civ. P. 26(d)(3). Under Rule 16, a district court may issue orders, including those authorized by Rule 37, if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f), (f)(1)(C). Under Rule 37, a court may sanction a party by "striking pleadings in whole or in part." Fed R. Civ. P. 37(b)(2)(A)(iii). Because the district court dismissed Quintara's trade secrets as a discovery sanction but did not make specific findings supporting such a sanction, we "review the record independently to determine whether the dismissal was an abuse of discretion." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385 (9th Cir. 1988) (citing *Malone*, 833 F.2d at 130). A dismissal based on a failure to comply with a pretrial order is a harsh penalty that, given its severity, should be dispensed only in a limited set of "extreme circumstances." *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986). Quintara's failure to specify its trade secrets at the outset of discovery as required by the district court's order was not such a circumstance.

We weigh five factors in considering whether a dismissal is an appropriate sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)).

The first and second factors, the public's interest in expeditious resolution of litigation and the court's interest in managing its docket, usually rise and fall together in this balancing. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) ("[W]e give deference to the district court because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable."). Here, although Quintara's failure to disclose was neither "dilatory" or "evasive," we do not doubt the court's concern with moving the case along. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002); *see* Fed. R. Civ. P. 1 (explaining that the public has an interest in "the just, speedy, and inexpensive determination of every action"). Yet a five-month delay of discovery—half of which is attributable to the motion for the decision under review—does not justify the functional dismissal of Quintara's claim as to the nine trade secrets. Two months of discovery remained, and at the time of dismissal the trial date stood six months away. The delay therefore "did not consume 'large amounts of the court's valuable time,' or cause any 'serious disruptions' of the district court's schedule." *Hernandez*, 138 F.3d at 399 (first quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); and then quoting *U.S. for Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988)). The resolution of the motion to strike, while expeditious, was premature.

As to any prejudice to the defendants, the third factor, both parties chose to litigate whether and how to disclose the trade-secret claim, and the record does not suggest that any delay attributable to Quintara prejudiced Ruifeng's defense. Quintara, after all, attempted to comply with the district court's order to describe its trade secrets in more detail even if it did not, as the court concluded, meet every element of

its order. *Cf. Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169–70 (9th Cir. 2012) (upholding default judgment sanction where party "willfully and in bad faith" "violated the court's discovery order").

The fourth factor, the public interest in resolving cases on the merits, also cuts against dismissal. The district court dismissed Quintara's claim to nine of its trade secrets because Quintara failed to prove just one element of its DTSA claim—that it owned sufficiently particularized trade secrets. Because it invited and granted the motion to strike before discovery had progressed, the district court's order "did not fairly permit development of the issues for resolution." *InteliClear*, 978 F.3d at 663. Therefore, the functional dismissal of the trade secrets could not completely resolve Quintara's claim on the merits, and this factor weighs against dismissal. *See Yourish*, 191 F.3d at 992 (noting that public policy generally "strongly favors disposition of actions on the merits").

Finally, the fifth factor, consideration of less drastic sanctions, also cuts against dismissal. The district court's order did not discuss granting, modifying, or denying Ruifeng's second motion for a protective order. Instead, it invited Ruifeng to proceed with discovery or move to strike Quintara's trade secrets. It also did not consider alternatives before striking Quintara's trade secrets. *See Ferdik*, 963 F.2d at 1262. For example, the district court could have granted a protective order limiting discovery to whether Quintara had identified its trade secrets with "sufficient particularity" before permitting additional discovery. *See InteliClear*, 978 F.3d at 662 ("Refining trade secret identifications through discovery makes good sense[.]"); Fed. R. Civ. P. 26(c)(1)(G) (protective orders for trade secrets). After an opportunity for discovery on the identification of the trade secrets, the court

could have invited a motion for summary judgment, and absent a genuine fact dispute as to whether trade secrets were sufficiently particularized, it could have granted summary judgment as to those trade secrets. *See InteliClear*, 978 F.3d at 663–64; Fed. R. Civ. P. 56(c). Or if, after discovery and an opportunity to clarify the level of particularity required for its claim to move forward, Quintara still refused to supplement its trade-secret identification, the district court could have excluded evidence of any added specifications from consideration on summary judgment or at trial. *See Imax*, 152 F.3d at 1164–66–64; Fed. R. Civ. P. 37(c)(1) (exclusion of evidence for failure to supplement); *see also InteliClear*, 978 F.3d at 663 (explaining that after a plaintiff has "gone through the dialectic discovery process, [it] should not have been confused 'as to the level of specificity required'" (quoting *Imax*, 152 F.3d at 1167)). Lastly, the court premised its Disclosure order on sequencing discovery and did not suggest it was on pain of dismissal. So Quintara was not on notice that its first disclosure to the court was its final opportunity to amend its trade-secret Disclosure. *See Malone*, 833 F.2d at 132 (concluding that a warning can be sufficient to meet the "consideration of alternatives" requirement).

Although our five-factor test for dismissal sanctions invites case-specific analysis, a DTSA trade-secret claim will rarely be dismissible as a discovery sanction in a situation like this. The district court's dismissal of these trade secrets came early in the litigation and before an opportunity for discovery that would allow the parties to refine and clarify the identification of the alleged trade secrets at issue. And the reason for striking the trade secrets went to their merits: a fact question of "reasonable particularity" that should be resolved on summary judgment

or at trial. *InteliClear*, 978 F.3d at 658–59. While district courts have broad discretion and ample alternatives under the Federal Rules of Civil Procedure to manage the disclosure of trade secrets in discovery, here the district court abused its discretion in granting Ruifeng's motion to strike and dismissing Quintara's claim to the nine trade secrets at issue.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**[2] The parties shall bear their own costs on appeal.

---

[2] The district court did not err by denying Quintara's motion for a mistrial. *See United States v. Lemus*, 847 F.3d 1016, 1024 (9th Cir. 2016) ("A decision to not declare a mistrial will be reversed only if the improper comment, viewed in the context of the entire trial, more likely than not materially affected the verdict.").